## Carman v. Central Railroad Company of New Jersey.

*Negligence—Railroads—Grade crossings—" Stop, look, listen "—Questions of fact—Conflict of testimony.*

In an action against a railroad company to recover damages for personal injuries, where there is conflicting testimony as to whether the plaintiff in approaching a grade crossing in a country district, stopped, looked and listened at a point about fifteen feet from the crossing, and there is also a conflict in the testimony as to whether any signal was given by the train as it approached the crossing, and where the charge of the court was adequate, fully referring to the facts of the case and entirely correct in its legal aspects, submitting to the jury fairly the two questions of fact of the negligence of the defendant and the contributory negligence of the plaintiff, the verdict of the jury on these two questions of fact is obligatory upon the court and should not be disturbed.

*Trial—Charge—Points.*

The court is not bound to permit words to be put into the charge by

points so drawn by counsel as to make them the words of the court, where they are in fact the words of counsel drawing the points, and especially when there are woven into the points thus prepared facts and conclusions not justified by the testimony.

Argued April 11, 1900.    Appeal, No. 50, Jan. T., 1900, by plaintiff, from judgment of C. P. Luzerne Co., May T., 1897, No. 31, on verdict for defendant in case of Harrison Carman v. The Central Railroad Company of New Jersey.    Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for personal injuries.    Before HALSEY, J.

The facts appear by the charge which was in part as follows:
The suit here is one brought by Harrison Carman against the Central Railroad of New Jersey, based upon the allegation on the part of the plaintiff that the New Jersey Central Railroad by reason of its negligence, or the negligence of its employees, did him an injury.    Now, what are the facts?    On the 20th of January, 1897, Harrison Carman, the plaintiff, was an employee of a tea firm in the city of Wilkes-Barre.    In pursuance of his duty as such employee he had occasion to visit the locality of what is known as Fairview.    It has many names. The township is known as Fairview, the station is known as Solomon's Gap.    Another village, just beyond, is called South Fairview, and another still further on, a distance of two miles probably, is called Penobscot.    But it is all within the confines of the township of Fairview.    The locality of the accident was in the vicinity of Solomon's Gap station of the New Jersey Central, Railroad and it occurred by reason of a collision between the plaintiff and the New Jersey Central Railroad's train No. 16, on the 20th of January, 1897, at about 4 : 15 o'clock in the afternoon.    The plaintiff, Mr. Carman, has stated to you that he stopped at Mrs. Sullivan's house, just below the crossing of the tracks, and at this point it might be proper for the court to call your attention to the geography of the locality.    For a distance possibly of about half a mile below the Sullivan house the highway upon which Mr. Carman was traveling runs substantially parallel in a northwesterly direction toward Wilkes-Barre to the New Jersey Central Railroad and the railroad

just above it known as the Lehigh valley cut off.   Mr. Carman
was coming from Wilkes-Barre and stopped at Mrs. Sullivan's.
He performed his mercantile duty there and came, as he says,
from the house, entered his wagon, but prior to that time
looked upon the railroad to see if he could see any approaching
trains.   The distance of this house from the track was approx-
imately or substantially seventy-five feet.   He then says that he
started from the Sullivan house and approached within fifteen
or twenty feet of the crossing, stopped, looked and listened up
and down the tracks, and seeing no train he passed upon the
tracks, and was struck by train No 16, at about 4 : 15 o'clock.   As
a consequence of that collision he was very seriously injured.
That is beyond controversy, gentlemen of the jury.   It has not
been questioned by the defendants here that this plaintiff was
then and there very seriously injured as a consequence of the
collision with the railroad train.   He had contusions on his
head and on his body, and as the doctors say, there was a com-
pound fracture of the skull at the base, and that he is possibly per-
manently injured.   Now, gentlemen of the jury, there cannot be
any recovery here, in the first instance, unless you find that
this defendant company was guilty of negligence.   It makes
no difference whether Mr. Carman stopped, looked and listened
or not, and then passed upon these tracks and was struck, if
the company performed its full measure of duty there.   [We
say to you, gentlemen of the jury, that this crossing was in a
country district.   That the duty of the company was to give
the customary warning for that crossing, and if that warning
was given and you believe it was given it matters not how dire
the consequences may have been to the plaintiff here he cannot
recover.] [5] [And with this thought in mind, gentlemen of the
jury, the presumption is that the company did its duty.   There-
fore the burden is on the plaintiff here to show that they did
not do their duty.   The plaintiff must satisfy you that the
company through its employees did not give the warning sig-
nal for that train on that day for that crossing when he was in-
jured.]   [7] Now what is the testimony, gentlemen of the jury?
The testimony is that of a positive character given by the
plaintiff himself, that there was no warning given on that day
for this crossing, that there was no whistle blown and that
there was no bell rung to warn persons who were about to

cross at that point the tracks of the railroad. This is the positive testimony. Now, there is what is known as negative testimony. Several witnesses have been called who have said that they did not hear the warning. They might have called multitudes of people to testify to the same fact. You yourselves did not hear that warning.

Plaintiff presented among others the following points:

4. A traveler is bound to do his duty about stopping—to stop, look and listen, and otherwise, be careful, whether the employees of the railroad company that are in charge of the train do their duty or not. But a traveler is not bound to anticipate their negligence. He has a right to expect them to do their duty. It is the duty of those in charge of a train to signal the fact of its approach to a crossing by the use of a whistle, or some other reasonable means. This must also be a timely notice, considering the circumstances of the case. The law presumes in favor of a corporation that its employees have done this, and the traveler has a right to expect it. If, therefore, Harrison Carman did his duty by stopping, looking and listening at a proper place, and by otherwise using due care according to the circumstances, but if there was no notice by blowing the whistle given by those in charge of the train, or no other reasonable notice given of its approach, a thing usually done, and which Carman had a right to expect to be done, and by this omission upon the part of the company his vigilance was allayed, so that he, without negligence of his own, went upon the track, and was run down and injured, the company is not now at liberty to impute the consequences of its own acts to his want of vigilance, a quality of which they deprived him. If their acts brought him within the boundary of peril, without negilgence upon his part, they must answer for the result of that condition. *Answer:* That point we negative, because there are some allegations contained in it we do not think are in this case. [2]

5. The plaintiff alleges that the company was also negligent in running its train at an improper or excessive rate of speed and in not having the crossing properly guarded by gates or an attendant. There is no fixed rule of law that says just how fast a train may or may not run, or that a company is bound to furnish gates or guards at railroad crossings. The rule is that railroad companies are bound to use ordinary care according

to the circumstances to make their crossings reasonably safe. What constitutes reasonable care, and whether the company have measured up to it, are usually questions to be decided by the jury from the evidence and circumstances of the case. While the law does not positively require a railroad company to station flagmen, or erect gates, or dictate as to the appliances to be used, still, if the safety of the traveling public cannot otherwise under the circumstances be reasonably secured than by stationing a flagman, or erecting safety gates, or adopting some other reasonable safeguard, a company would be bound to use such a precaution. If they used them, and made their track reasonably safe at a crossing, considering all the circumstances surrounding it, they could then run their trains over the crossing at any rate of speed they chose; but if they neglected to use every such precaution necessary for the reasonable safety of the public, no moderation or slowness of speed will excuse such neglect, when such neglect is the sole and only proximate cause of an injury. *Answer :* That point we negative. [3]

If the jury find from the weight of the credible evidence in the case that the crossing where the accident occurred was an unusually dangerous one, that because of the manner of the railroad being constructed through cuts and around curves, and because of the depot built by the company, and the brush and trees left growing along its tracks, it was impossible or difficult for a traveler to get a fair, unobstructed view for more than about 400 feet in either direction before getting into danger, and that because of several railroads in the near vicinity and because of the noise of steam machinery of any kind erected near the crossing it was difficult to hear or locate the sound of a whistle if blown, and that the crossing was located in a village close to schools, churches, hotels and stores, and was much used, and also, that on the day in question and at the time of the accident a blinding snowstorm was blowing, then it became the duty of the company, in managing its trains to use greater care and prudence in approaching the crossing; and if the persons in control of the train did not use such care and prudence as were commensurate with the danger, either by failure to give proper signals at a proper time and place, or in failing to have safety gates or a watchman at the crossing, or in failing in any other manner to do or provide such reasonable care as would

make the crossing reasonably safe under the circumstances, if the company was negligent in any one or all these respects, and Carman was injured because of such negligence, without contributory negligence on his part, the company would be liable and he would be entitled to recover. *Answer:* That point we negative as we did the other. [4]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (2–7) above instructions, quoting them.

*Paul J. Sherwood,* for appellant, cited Penna. R. Co. v. Lewis, 79 Pa. 33; Killips v. Phila. & Reading R. R. Co., 88 Pa. 405; Jones v. D., L. & W. R. R. Co., 128 Pa. 308; Philpott v. Penna. R. Co., 175 Pa. 570; Werner v. Penna. R. Co., 89 Pa. 59; Phila. & Reading R. R. Co. v. Carr, 99 Pa. 505; Penna. R. Co. v. Coon, 111 Pa. 430; L. V. R. R. Co. v. Brandtmaier, 113 Pa. 610; Newhard v. Penna. R. Co., 153 Pa. 422; Ritchie v. Reading & Columbia R. R. Co., 102 Pa. 425; Ellis v. Lake Shore, etc., R. R. Co., 138 Pa. 506; Reeves v. D., L. & W. R. R. Co., 30 Pa. 461; Penna. R. Co. v. Ogier, 35 Pa. 60; Noar v. Phila. & Reading R. R. Co., 3 Penny. 443.

*A. H. McClintock* and *H. W. Palmer,* for appellee.

PER CURIAM, April 23, 1900:

We think the charge of the learned court below was adequate, with a full reference to the facts of the case, and that it was entirely correct in all its legal aspects. It left to the jury fairly the two questions of fact of the negligence of the defendant and the contributory negligence of the plaintiff. The instructions with reference to both of these subjects were correct and referred the decision of both to the jury. The verdict having been found in favor of the defendant is obligatory upon the court below and upon this court on those two questions of fact. We do not think the charge is amenable to the criticism made upon it in the appellant's argument nor do we think a court is bound to permit words to be put into the charge by points so drawn by counsel as to make them the words of the court where

they are in fact the words of counsel drawing the points, and especially when there are woven into the points thus prepared facts and conclusions not justified by the testimony. If the charge as delivered is correct in its substance and commits fairly to the jury the determination of the disputed facts it is legally sufficient. We regard what the court said as to the crossing being in a country district as correct. We see no error in the rulings on questions of evidence. The assignments of error are all dismissed.

Judgment affirmed. ·